NO.   94-501

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

IN RE THE MARRIAGE OF

TERRI D. DURBIN, n/k/a TERRI D. WARD,

      Petitioner and Respondent,

  and

EDWIN D, DURBIN,

      Respondent and Appellant.

FILED

APR 25 1995

Ed Smith

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Tenth Judicial District,
              In and for the County of Fergus,
              The Honorable Ed McLean, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Michael G. Moses, Moses Law Firm,
          Billings, Montana

      For Respondent:

          Kevin T. Sweeney, Sweeney & Healow,
          Billings, Montana

Submitted on Briefs:   March 2, 1995

Decided:   April 25, 1995

Filed:

_____
Clerk

Justice William E. Hunt, Sr., delivered the opinion of the Court.

Edwin Durbin appeals the findings of fact, conclusions of law, and decree of the Tenth Judicial District Court, Fergus County, finding in favor of Terri Ward, formerly known as Terri Durbin. We affirm.

Ed raises eight separate issues on appeal. We consolidate and reframe those issues as follows:

1. Did the District Court abuse its discretion by increasing Ed's child support obligation?

2. Did the District Court abuse its discretion by ordering Ed to pay Terri $2264.10 for the children's health care expenses?

3. Was the District Court's award of attorney fees and costs to Terri supported by substantial evidence?

4. Did the District Court abuse its discretion by awarding Terri interest on the child support arrearage?

5. Did the District Court err by adopting findings and conclusions substantially similar to those proposed by Terri?

Ed and Terri were married in December 1975. Two children were born of the marriage. The marriage was dissolved in November 1986. The decree of dissolution awarded the parties joint custody of the children, with Terri retaining primary physical custody. Ed was ordered to pay child support of $150 per month during the school year and $75 per month for the two summer months when he was to have physical custody. The court also ordered Ed to provide health insurance for the children and ordered each party to pay 50 percent

of the children's health care expenses that were not covered by insurance.

On December 18, 1986, Ed was seriously injured in a job-related accident, resulting in his permanent blindness. As a result, Ed received a settlement that included a cash lump sum of $373,557 and an annuity valued at $499,950.27 which is payable in the amount of $3788 per month for the rest of Ed's life or a minimum of 30 years. Ed's attorney fees and litigation expenses also were paid as part of the settlement.

Also as a result of the accident, Ed received workers' compensation benefits and a lump sum payment of $5000, plus monthly payments of $87 from his employer's Fireman's Fund disability insurance. Six months after the accident, Ed qualified for and began receiving Social Security Disability (SSD) benefits, which reduced the amount of his workers' compensation benefits.

Also as a result of Ed's accident, Terri began receiving SSD benefits on behalf of the children. On July 1, 1987, Ed stopped making his court-ordered child support payments because he believed that the SSD benefits served as credit toward his obligation.

In May 1990, Ed filed a petition for modification of custody and child support. Terri filed a cross-petition requesting past, current, and future child support. Following hearing, the District Court denied Ed's custody modification request and denied Terri's request for child support modification. Terry subsequently appealed to this Court.

In In re Marriage of Durbin (1991), 251 Mont. 51, 823 P.2d 243 (Durbin I), we overturned the District Court's decision and remanded the case for determination of child support consistent with our opinion. We specifically instructed the District Court to:

> [M]ake additional findings and conclusions concerning 1) Ed['s] and Terri's financial resources, 2) Ed['s] and Terri's annual gross income, 3) the children's expenses, and 4) Ed's actual and necessary financial needs including those associated with his medical care resulting from his blindness. We instruct the District Court to subtract Ed's actual and necessary needs including those associated with his medical care from his financial resources, and consider the remaining amount in determining a future child support modification . . . .

Durbin I, 823 P.2d at 249. We further held that the SSD benefits received on behalf of the children prior to May 29, 1990, were not to be credited toward Ed's child support obligation, but that the benefits received after May 29, 1990, were to be credited. Durbin I, 823 P.2d at 247. Finally, we instructed the District Court to make findings and conclusions concerning the award of attorney fees and costs and the proper allocation of income tax deductions for the parties' dependent children. Durbin I, 823 P.2d at 250.

On October 13, 1992, the District Court heard further testimony and received additional evidence. On January 6, 1993, the court entered its findings of fact and conclusions of law. On January 29, Terri moved for, and was subsequently granted, a new trial.

The District Court, a new judge presiding, conducted another hearing on November 2, 1993. Pursuant to the parties' stipulation, the court took judicial notice of the evidence previously submitted, including the transcript of the October 1992 hearing.

On July 15, 1994, the District Court filed its amended findings of fact, conclusions of law, and decree. The court ordered Ed to pay Terri child support as follows:

| | |
|---|---|
| June 1990 to August 1992 | $ 1231.00 per month |
| August 1992 through November 1993 | 986.00 per month |
| November 1993 to July 1994 (first child's emancipation) | 761.39 per month |
| July 1994 through the second child's emancipation | 665.59 per month |

Additionally, the court ordered Ed to pay Terri $14,602.46, plus interest, for back child support, $2264.10 for his 50 percent share of the children's health care expenses, and to reimburse Terri for one half of her legal fees and costs.

Ed appealed.

## ISSUE 1

Did the District Court abuse its discretion by increasing Ed's child support obligation?

> In reviewing the district court's findings in child support modification cases, a presumption exists in favor of the district court's decision, and we will overturn the decision only if the district court abused its discretion.

In re Marriage of Paunovich (Mont. 1994), 52 St. Rep. 144, 145; In re Marriage of Craib & Rhodes (1994), 266 Mont. 483, 490, 880 P.2d

5

1379, 1384. The court must initially determine that there has been a "showing of changed circumstances so substantial and continuing to make the terms unconscionable." Marriage of Craib & Rhodes, 880 P.2d at 1384 (quoting § 40-4-208(2)(b)(i), MCA).

Ed claims that the District Court abused its discretion (1) by finding that a substantial and continuing change in circumstances occurred, (2) by failing to use the proper child support guidelines, (3) by failing to take equitable matters into consideration, and (4) by increasing the amount of child support he must pay. We disagree with each of these assertions.

First, Ed claims that "under the unique circumstances of this case," there has been no showing of changed circumstances. This action arises upon Ed's petition for modification filed May 29, 1990, and Terri's cross-petition filed June 14, 1990. Ed's petition states:

> Respondent [Ed] specifically requests modification of child support in that there has been changed circumstances so substantial and continuing as to make the terms of child support unconscionable under the circumstances as they now stand.

(Emphasis added.) In Rowland v. Klies (1986), 223 Mont. 360, 367-68, 726 P.2d 310, 316, we reaffirmed the rule of judicial estoppel which provides "that during the course of litigation a party is not permitted to assume or occupy inconsistent and contradictory positions . . ." Ed, therefore, is judicially estopped from changing his position regarding changed circumstances. Moreover, the record is replete with evidence that

the circumstances of the parties' substantially changed and that the change is continuing.

Secondly, Ed asserts that the District Court did not apply the proper child support guidelines. However, the District Court's application of guidelines is completely supported by the testimony of Special Assistant Attorney General Peggy Probasco, who is an attorney for the Child Support Enforcement Division (CSED) of the Montana Department of Social and Rehabilitation Services, and who helped draft Montana's child support guidelines. The District Court substantially adopted Probasco's child support calculations. At trial, Probasco explained that the four distinct amounts of child support were calculated pursuant to different sets of guidelines in effect during each of the four corresponding time periods. She testified that she made her calculations using the information that the parties provided to the court, including their financial affidavits and tax returns. She pointed out the source of the figures that she used, including numerous variances which were made due to the unique circumstances of the parties. She testified that her calculations took into account this Court's instructions regarding the SSD benefits received on behalf of the children. She further stated that she was not testifying on behalf of Terri or Ed, but that she was testifying on behalf of CSED, which had an active interest in the case due to the SSD benefits issue; and she stated that she was not being paid by either party for her testimony.

Ed next argues that the District Court "finds no unique circumstances for a departure from the guidelines in accordance with the directions of" this Court. We disagree. In its Conclusion of Law No. 9, the District Court stated:

> The Court has varied from the Guidelines in order to account for the unique circumstances of Edwin Durbin . . . In arriving at the foregoing findings, the Court has also considered the unique circumstances that Edwin has been placed in because of his blindness.

Ed fails to provide this Court with any specific example of how the District Court failed to take into account his unique circumstances. Indeed, the court made a variance for Ed's medical expenses, despite the fact that Ed provided no expert testimony regarding his medical expenses, and allocated Ed a six and one-half percent retirement income, although the guidelines do not provide for it.

Finally, Ed argues that the court abused its discretion by increasing the amount of child support that he owes. However, as we discussed above, the record contains substantial evidence to support the District Court's findings and conclusions, and therefore, we hold that the District Court did not abuse its discretion by increasing the amount of child support that Ed must pay.

<u>ISSUE 2</u>

Did the District Court abuse its discretion by ordering Ed to pay Terri $2264.10 for the children's health care expenses?

The parties' decree of dissolution provided that Ed and Terri would equally share the cost of their children's health care expenses that were not paid by insurance. At trial, Ed, Ed's wife, and Terri each testified regarding the amount of medical expenses that Ed owed Terri. Terri claimed that Ed owed her $2264.10. Ed and his wife disputed this amount. Ed's wife testified that Ed owed a total of $1542.43.

In Interstate Production Credit Ass'n v. DeSaye (1991), 250 Mont. 320, 323, 820 P.2d 1285, 1287, we held that this Court may not substitute its judgment for that of the trier of fact. Moreover, we will not substitute our judgment for that of the district court regarding the credibility of witness or the weight to be given their testimony. In re Marriage of Doolittle (1994), 265 Mont. 168, 174, 875 P.2d 331, 335. It is the duty of a district court, not the Supreme Court, to resolve any conflicts in evidence. Tonack v. Montana Bank of Billings (1993), 258 Mont. 247, 251-52, 854 P.2d 326, 329.

In this case, the District Court found that Ed owed Terri $2264.10 for the children's health care expenses. The finding is supported by substantial, credible evidence, i.e., Terri's testimony. We hold that the District Court did not abuse its discretion by ordering Ed to pay Terri that amount.

ISSUE 3

Was the District Court's award of attorney fees and costs to Terri supported by substantial evidence?

9

Section 40-4-110, MCA, provides district courts with the discretion to award attorney fees and costs. The statute requires the court to consider the financial resources of the parties. Section 40-4-110, MCA. In In re Marriage of Malquist (Mont. 1994), 880 P.2d 1357, 1362, 51 St. Rep. 914, 917, we held: (1) that the district court must hold a hearing allowing for oral testimony, cross-examination, and the introduction of exhibits, and (2) that the petitioning party must make a showing of necessity and demonstrate that the award is reasonable and based on competent evidence.

At trial, Terri testified in detail regarding her financial circumstances. She stated and introduced documents evidencing her negative net worth. Evidence regarding her attorney fees and other legal expenses were introduced at both the October and November 1992 hearings. Both of Terri's attorneys submitted affidavits outlining their fees, and testimony was given regarding the reasonableness of those fees.

Ed argues that In re Marriage of Davies (Mont. 1994), 880 P.2d 1368, 1377, 51 St. Rep. 929, 935, requires that hearing on the issue of attorney fees occur separately from the child support proceedings. However, our holding in Davies--that the district court erred by not holding a separate hearing on attorney fees--is limited to the particular facts of that case. To require a separate hearing on the issue attorney fees in every child support case would unnecessarily burden the courts and the parties.

We determine that Terri made a showing of **necessity** and demonstrated, via competent evidence, that an award of half of her attorney fees and legal costs was reasonable. We hold that the District Court's award of attorney fees and costs to Terri was supported by substantial, credible evidence.

## ISSUE 4

Did the District Court abuse its discretion by awarding Terri interest on the child support arrearage?

"We have consistently held that, absent contrary provisions in a dissolution decree, interest on child support arrearage is automatically collectable by [the] judgment creditor spouse." In re Marriage of Stroop (Mont. 1994), 887 P.2d 714, 717, 51 St. Rep. 1417, 1419. The decree of dissolution in the instant case does not contain any provision contrary to the collection of interest on arrearages. Ed argues that the rule regarding interest should not apply in his case, claiming that he did not know what the proper amount of child support should be and that "the equities in this case justify a departure from the general rule of awarding interest." Ed cites no authority or public policy in support of his position, and we are not persuaded by his arguments. We hold that the District Court properly awarded interest on the child support arrearage.

## ISSUE 5

Did the District Court abuse its discretion by adopting findings and conclusions substantially similar to Terri's proposed findings and conclusions?

11

Ed asserts that the District Court erred by adopting verbatim Terri's proposed findings and conclusions, In In re Marriage of Allison (Mont. 1994), 887 P.2d 1217, 1226, 51 St. Rep. 1502, 1509, we stated:

> While we discourage the verbatim adoption of proposed findings and conclusions, "the practice does not constitute error per se." In re Marriage of Nikolaisen (1993), 257 Mont. 1, 5, 047 P.2d 287, 289. In Nikolaisen, we set forth the following test:
>
> > When reviewing the adequacy of the findings of fact and conclusions of law, we examine whether they are sufficiently comprehensive and pertinent to provide a basis for a decision, and whether they are supported by substantial evidence.

While the record reveals that the court's findings and conclusions are substantially similar to those proposed by Terri, we are satisfied that those findings and conclusions are comprehensive, pertinent, and supported by substantial, credible evidence. The District Court, therefore, did not abuse its discretion by issuing findings and conclusions substantially similar to those proposed by Terri.

Affirmed.

Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1988 Internal Operating Rules, this decision shall not be cited as precedent and shall be published by its filing as a public document with the Clerk of the Supreme Court and by a report of its result to Montana Law Week, State Reporter and West Publishing Company.

_William E. Hunt, Sr._
Justice

12

we concur:

_____
Chief Justice

_____

_____

_____
Justices

13

April 25, 1995

CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Michael G. Moses
Moses Law Firm
P.O. Box 2533
Billings, MT  59103-2533

Kevin T. Sweeney
SWEENEY & HEALOW
1250 15th St. West, Ste. 202
Billings, MT  59102

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy